IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


Gregory Gimbrone,                    :

            Plaintiff,        :     Case No. 2:12-cv-251

    v.                        :     JUDGE GREGORY L. FROST
                                    Magistrate Judge Kemp
Dr. Krisher, et al.,                 :

            Defendants.       :


                    REPORT AND RECOMMENDATION

     Plaintiff, Gregory Gimbrone, a prisoner who resides at the
Chillicothe Correctional Institution, filed this case under 42
U.S.C. §1983 asserting a claim for denial of medical case under
the Eighth and Fourteenth Amendments to the United States
Constitution.  Along with his complaint, he moved for preliminary
injunctive relief in the form of an order which, if issued, would
require his institution to provide him a cane.

     In an order filed on May 25, 2012, the Court granted Mr.
Gimbrone leave to file an amended complaint (which he has now
done) and also requested additional briefing on the issues raised
by his motion for preliminary injunctive relief, which had been
the subject of some amount of briefing before that order was
issued.  Defendants filed a supplemental memorandum in opposition
on June 15, 2012, and Mr. Gimbrone filed a supplemental reply
brief on June 25, 2012.  Both parties also submitted additional
exhibits.  For the reasons set forth in this Report and
Recommendation, it will be recommended that the motion for
preliminary injunctive relief be denied.

                    I.  Introduction

     Mr. Gimbrone has pleaded the following facts in his amended
complaint.  In 1974, his right foot was partially amputated by a

railroad car.  His foot was reattached at the Kettering Medical
Center, and he was able to re-learn to walk, using a cane.
Approximately 20 years later, he was awarded Social Security
disability benefits due to chronic physical and psychological
problems.  Five years after that, he was committed to the custody
of the Ohio Department of Rehabilitation and Correction to begin
serving a prison term of eight to twenty-five years.  At the time
he began serving that sentence, he was using a cane, and he did
so more or less continuously, with the approval of various prison
doctors, until 2010.

On April 20, 2010, as a result of an examination conducted
by a Dr. Williams (who is not a defendant in this case), Mr.
Gimbrone's cane was taken from him.  He grieved the loss of his
cane, but without success.  At some point, Dr. Krisher replaced
Dr. Williams as the institutional physician, and Mr. Gimbrone
went to see him on September 22, 2011.  According to Mr.
Gimbrone, he told Dr. Krisher that he was suffering from a great
deal of pain, and asked for his cane back.  However, Dr. Krisher
refused to prescribe a cane, and, if the complaint is to be
believed, also told Mr. Gimbrone that "he did not care about [Mr.
Gimbrone's] disability or his pain" and that he would not provide
medical care to Mr. Gimbrone for any conditions relating to his
foot.  Mr. Gimbrone grieved that decision also, again
unsuccessfully, and also grieved Dr. Krisher's refusal to order a
cane after Dr. Krisher had reviewed medical records from the
Kettering Medical Center.  Mr. Gimbrone continues to suffer pain
and swelling in his reattached foot, and he has difficulty
walking due to those symptoms.

## II.  The Basic Facts

The complaint in this case (which is not verified, meaning
that Mr. Gimbrone has not actually sworn to the truthfulness of
the facts alleged) does not stand unrebutted, nor does it stand

unsupported. As part of their supplemental response to Mr.
Gimbrone's motion for preliminary injunctive relief (Doc. 20),
defendants submitted two affidavits, one from Dr. Krisher, and
one from Beth Higginbotham, the acting health care administrator
and the quality improvement coordinator at the Chillicothe
Correctional Institution. Ms. Higginbotham is also named in the
amended complaint as a defendant. Mr. Gimbrone has submitted his
own affidavit as an attachment to his reply memorandum (Doc. 22).
In order to highlight where the parties' versions of the facts
conflict, the Court will summarize each of these affidavits.

Taken together, Dr. Krisher's and Ms. Higginbotham's
affidavits say the following. First, they confirm that Dr.
Krisher met with Mr. Gimbrone on September 22, 2011. That
appointment came about because, nine days earlier, Mr. Gimbrone
had complained that he was suffering from psoriasis on his right
foot and that he wanted to see a doctor about getting a cane.

Mr. Gimbrone, during the appointment, was able to walk
without a cane, demonstrating only a slight limp. Dr. Krisher
examined Mr. Gimbrone's foot and noted multiple scars on the
foot, but observed no lesions, tenderness, swelling or warmth.
Dr. Krisher was aware that prior institutional records stated
that Mr. Gimbrone was able to walk with a "strong and steady
gait" without a cane. In fact, such an entry does appear in a
March 17, 2010 note in Mr. Gimbrone's medical record. Based on
the results of his examination and his review of the file, Dr.
Krisher determined that Mr. Gimbrone did not need a cane, and he
refused to order it.

Dr. Krisher did ask for medical records from outside sources
in order to evaluate Mr. Gimbrone's need for a cane. There was
some delay in getting these records because Mr. Gimbrone would
not initially sign a release for them. The institution received
records from Kettering Medical Center on December 14, 2011.

Those records show that Mr. Gimbrone was treated with a right lumbar sympathetic block in 1997 due to his complaints of pain in his right foot and ankle.  They say nothing about his use of a cane.  Ms. Higginbotham met with Mr. Gimbrone shortly after she received the records, and confirmed what Dr. Krisher had told him - that he did not meet the institution's criteria for being prescribed a cane.  Both affidavits, and Mr. Gimbrone's medical chart, show that he did not ask for any treatment for any foot-related problems after that date, and the affidavits also say that he did not purchase any over-the-counter pain medication, such as Tylenol or ibuprofen, from the institutional commissary since November, 2011.

Mr. Gimbrone's affidavit recites roughly the same chronology and he does not argue with many of the statements made by Dr. Krisher and Ms. Higginbotham, although, with respect to his failure to buy any over-the-counter pain medications, he asserts that he is allergic to ibuprofen and that aspirin has no effect on the type of pain he is suffering.  He characterizes what Dr. Krisher told him on September 22, 2011, in a slightly different way, essentially affirming the allegation in the complaint that Dr. Krisher told him he would not get any treatment at all for his foot.  Finally, he swears that he can only walk for 30 minutes at a time before being forced to elevate his foot and treat it with ice, and that, among other things, this is causing him to miss at least one trip to the chow hall every day.  He also attached a copy of Ohio Administrative Code §5120-9-60 to his affidavit, pointing out that it defines a "medically necessary" treatment as one which is needed to "[p]reserve life or limb" or "alleviate significant pain or discomfort."

### III.  <u>Analysis</u>

As noted in the May 25, 2012 order, the Court is required to weigh four factors in determining whether a party is entitled to

a preliminary injunction under Fed. R. Civ. P. 65(a).  Those
factors are: (1) the likelihood that the party seeking the
injunction will succeed on the merits of the claim; (2) the
extent to which the party seeking the injunction will be injured
unless relief is granted, focusing particularly on the
possibility of irreparable injury; (3) whether the injunction, if
issued, will cause substantial harm to others; and (4) whether
issuance of the injunction is in the public interest.  See
Washington v. Reno, 35 F.3d 1093 (6th Cir. 1994).  No one
factor is dispositive.  Rather, these four factors must be
balanced in determining whether preliminary injunctive relief
should issue.  In re Delorean Motor Co., 755 F.2d 1223, 1229
(6th Cir. 1985).

     The third and fourth factors are not independently
implicated in this case.  An injunction, while it might help Mr.
Gimbrone, could possibly cause some harm to others because
defendants' policy is to limit the number of canes present in the
institution to those inmates who really need them, given that a
cane can be used as a weapon, but there is no real evidence that
such a risk would be presented by giving a cane to Mr. Gimbrone.
And the public interest is served by vindicating constitutional
rights if, indeed, Mr. Gimbrone's rights are being violated, but
it is not served by a court order interfering with the ability of
prison officials to make sound medical decisions if, in fact,
that is what they have done.  In short, the likelihood that Mr.
Gimbrone will succeed on the merits, and the possibility that he
will suffer irreparable injury if not given a cane, are the key
factors which will determine if injunctive relief is warranted.

     Here, in order for Mr. Gimbrone to demonstrate that it is
likely he will succeed on the merits of his claim, he must show
that the defendants were deliberately indifferent to his serious
medical needs.  See generally Wilson v. Seiter, 501 U.S. 294, 297

(1991); see also Blackmore v. Kalamazoo County, 390 F.3d 890, 895 (6th Cir. 2004).  At this point in the case, there is a factual dispute on both elements; defendants claim that there is no evidence of a serious condition affecting Mr. Gimbrone's right foot - no infection, no rash, and no physical problem that prevents him from walking effectively (although with a slight limp) without a cane - and no evidence that they deliberately refused to provide him with necessary treatment (their view being that a cane is not necessary for Mr. Gimbrone's health or well-being).  On the other hand, Mr. Gimbrone claims that his pain and his inability to walk even to the chow hall three times a day is a serious medical need, and that the defendants did not just disagree with his request for a cane, but flatly refused to provide him with any medical treatment for his foot at all.

It is the movant's burden to prove that this and other factors weigh in favor of issuing preliminary injunctive relief. Granny Goose Foods v. Brotherhood of Teamsters, 415 U.S. 423 (1974).  When there is a conflict in the evidence, it could be said that the movant has simply failed to carry the burden of showing a likelihood of success on the merits because the ultimate trier of fact could believe either side of the story. However, the Court of Appeals has cautioned that when the key facts relating to a preliminary injunction conflict, sometimes an evidentiary hearing may be needed.  See, e.g., Chrysler Corp. v. Franklin Mint Corp., 32 F.3d 569 (6th Cir. 1994)(unreported); see also McDonald's Corp. v. Robertson, 147 F.3d 1301, 1312 (11th Cir. 1998)("where facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue, an evidentiary hearing must be held"). Robertson also noted, however, that if the basic facts are undisputed and it is the inferences to be drawn from them that are at issue, the Court has discretion not to order a hearing.

The illustration it provided of that principle was a case where
an inmate and a prison were in conflict over medical care, and
the documentary evidence favored the prison's position.  In that
situation, "the district court did not err in declining to hold
an evidentiary hearing." Id. at 1313.  To some extent, taking
into account the totality of the documentary evidence, the Court
may also weigh or "evaluat[e] the sworn statements in light of
the overall record."  Phillips v. Crown Central Petroleum Co.,
376 F.Supp. 1250, 1254 (D. Md. 1973).

Applying these principles to this case, the Court concludes
that despite the conflict in the affidavits presented, an
evidentiary hearing is not needed.  It may well be that Mr.
Gimbrone has a serious medical need, and that walking without a
cane is causing him foot pain and swelling, but he has not asked
for any treatment for those conditions for almost a year.  The
Court can make a determination that if someone is in constant
pain, and a cane is not the only way to relieve it, the medical
records would likely show some request for treatment even if
prior efforts to get a cane were rebuffed.  Further, the medical
records show that when Mr. Gimbrone did ask for treatment for
psoriasis on his foot, he received a medical appointment in less
than two weeks.  It may be that he cannot take over-the-counter
painkillers or that they are ineffective, but that is all the
more reason why, if he is in pain due to the lack of cane and is
convinced he will not be given one, he would likely have sought
some type of medical relief for the symptoms he is experiencing.
His claim that Dr. Krisher said to him, in effect, that he would
neither prescribe a cane nor provide Mr. Gimbrone with any other
medical treatment for problems with his foot, no matter how
severe, lacks credibility, and the lack of treatment for foot
symptoms (as opposed to the lack of a cane) is not the primary
subject of the grievances Mr. Gimbrone filed on this subject.

Overall, the Court is not persuaded that Mr. Gimbrone has demonstrated either that it is likely he will succeed in proving that he has a serious medical need regarding his foot, or that he will suffer an irreparable injury if the issue of the cane is not resolved until this case is decided on its merits.

Even if the Court assumes, at this point, that Mr. Gimbrone has a fair chance of success with respect to his claim of a serious medical need, he also must demonstrate a likelihood of success on the issue of deliberate indifference. Many of the same considerations which lead the Court to question his chances of success on the issue of a serious medical need also undermine his deliberate indifference claim. Again, the medical records show that he was seen when he complained about psoriasis; that Dr. Krisher is not the only physician who thought that Mr. Gimbrone did not need a cane; that there are entries in Mr. Gimbrone's medical chart which support Dr. Krisher's conclusions; that prison officials did follow up on Mr. Gimbrone's complaints by obtaining and reviewing records from the Kettering Medical Center; and that those records make no mention of the need for a cane. This evidence is, at this point in the case, stronger than Mr. Gimbrone's unsupported allegation that Dr. Krisher absolutely refused to treat him for any foot issues, including the pain and swelling he now claims to be experiencing. Even if Dr. Krisher misread the records or negligently examined Mr. Gimbrone's foot, that would not be a constitutional violation. <u>See, e.g.,</u> <u>Comstock v. McCrary</u>, 273 F.3d 693 (6th cir. 2001). Finally, there is little, if any, medical evidence supporting a claim of an immediate or irreparable injury which will ensue if a cane is not immediately prescribed.

It is important to stress that, at this stage of the case, the Court is not rendering a decision on the ultimate merits of Mr. Gimbrone's claims. In fact, "it is generally inappropriate

for a federal court at the preliminary-injunction stage to give a final judgment on the merits." University of Texas v. Camenisch, 451 U.S. 390, 395 (1981). Rather, the Court engages in a balancing of the four factors to determine if they favor the issuance of an order either maintaining the status quo pending a decision on the merits, or, as here, actually altering the status quo because of the need to prevent an immediate and irreparable injury in a case where the plaintiff is likely to succeed on the merits. In the Court's judgment, this is not such a case. Therefore, the motion for temporary or preliminary injunctive relief cannot be granted.

## IV. Recommended Disposition

Based on the matters discussed above, it is recommended that Mr. Gimbrone's motion for preliminary injunctive relief (Doc. 3) be denied.

## V. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the

right to appeal the decision of the District Court adopting the Report and Recommendation. <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir.1981).


<u>/s/ Terence P. Kemp</u>    <br>
United States Magistrate Judge