IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


Gregory Gimbrone,                    :

            Plaintiff,        :     Case No. 2:12-cv-251

    v.                        :     JUDGE GREGORY L. FROST
                                    Magistrate Judge Kemp
Dr. Krisher, et al.,         :

            Defendants.       :


OPINION AND ORDER

On July 20, 2012 the Magistrate Judge issued a Report and
Recommendation (Doc. 24) concerning the motion for preliminary
injunction (Doc. 3) filed by plaintiff, Gregory Gimbrone, a
prisoner residing at Chillicothe Correctional Institution.  The
Magistrate Judge recommended that the motion be denied.  Mr.
Gimbrone has filed timely objections (Doc. 26).  Defendants have
filed a motion to strike Mr. Gimbrone's reply to defendants'
memorandum in opposition to Mr. Gimbrone's objections (Doc. 30).
Based on the foregoing reasons, the Court will overrule the
objections (Doc. 26), adopt the Report and Recommendation (Doc.
24) in its entirety, and grant the motion to strike (Doc. 30).
Accordingly, the motion for preliminary injunction (Doc. 3) will
be denied.

I.

If a party objects within the allotted time to a report and
recommendation, the Court "shall make a de novo determination of
those portions of the report or specified proposed findings or
recommendations to which objection is made."  28 U.S.C.
§636(b)(1); see also Fed. R. Civ. P. 72(b).  Upon review, the
Court "may accept, reject, or modify, in whole or in part, the
findings or recommendations made by the magistrate judge."  28
U.S.C. §636(b)(1).

With limited exceptions, Mr. Gimbrone has not objected to the accuracy of the Report and Recommendation's summary of the facts, so the Court adopts the summary of those facts not objected to.  The Court discusses here only those facts relevant to the resolution of Mr. Gimbrone's objections.

As the Report and Recommendation sets forth, in 1974 Mr. Gimbrone's right foot was partially amputated by a railroad car and then reattached at the Kettering Medical Center.  In 1999 Mr. Gimbrone was committed to the custody of the Ohio Department of Rehabilitation and Correction to begin serving a prison term of eight to twenty-five years.  At the time he began his sentence, he was using a cane.

According to Mr. Gimbrone's unverified amended complaint, on April 20, 2010, Dr. Williams, who is not a defendant in this case, revoked Mr. Gimbrone's privilege of using a cane.  Later, Dr. Krisher replaced Dr. Williams as the institutional physician and on September 22, 2011 Mr. Gimbrone went to see Dr. Krisher, complaining of pain and asking for his cane back.  The complaint then states that Dr. Krisher did not examine Mr. Gimbrone's foot and that Dr. Krisher stated "he did not care about [Mr. Gimbrone's] disability or his pain and [Mr. Gimbrone] would receive no medical assistance concerning [his] amputated foot." (Doc. 19, p. 4).  Mr. Gimbrone confirmed this allegation in a sworn affidavit, swearing that "Dr. Krisher stated [Mr. Gimbrone] would receive no treatment concerning his disabled foot."  (Doc. 22, Gimbrone Aff. ¶8).  Dr. Krisher subsequently reviewed medical records from the Kettering Medical Center but still refused to provide Mr. Gimbrone with further treatment for his foot.  (Doc. 19).  Mr. Gimbrone's affidavit states that he can only walk for 30 minutes at a time before being forced to elevate his foot and treat it with ice and that this is causing him to miss at least

one trip to the chow hall every day.  (Doc. 22, Gimbrone Aff. ¶¶4,5).

In defendants' supplemental response to Mr. Gimbrone's motion for preliminary injunction (Doc. 20), defendants submitted two affidavits and additional documentation disputing Mr. Gimbrone's version of the facts.  Defendants agree that Dr. Krisher met with Mr. Gimbrone on September 22, 2011, but dispute that Mr. Gimbrone was not examined.  Instead, defendants state that on September 13, 2011 Mr. Gimbrone saw a nurse about psoriasis on his foot and requested an appointment with a doctor about getting an order for a cane.  (Doc. 20, Higginbotham Aff. ¶7).  Mr. Gimbrone had that appointment with Dr. Krisher on September 22, 2011 and Dr. Krisher examined Mr. Gimbrone.  (Doc. 20, Krisher Aff. ¶6).  The exam revealed that Mr. Gimbrone was able to walk with a slight limp but without difficulty, and that Mr. Gimbrone's foot had multiple scars on it, but no lesions, tenderness, swelling or warmth.  (Doc. 20, Krisher Aff. ¶¶6,8).  Dr. Krisher reviewed the medical chart and it indicated Mr. Gimbrone "ambulates" with a "strong and steady gait without a cane."  (Doc. 20, Krisher Aff. ¶7).  Based on this examination and review of Mr. Gimbrone's medical chart, Dr. Krisher did not issue a cane order.  Dr. Krisher later ordered Mr. Gimbrone's outside medical records to verify his need for a cane and he received those records on December 14, 2011.  (Doc. 20, Krisher Aff. ¶9; Higginbotham Aff. ¶11).  Those records do not discuss Mr. Gimbrone's need for a cane.  (Doc. 20, Higginbotham Aff. ¶11).  Ms. Higginbotham, the prison's health care administrator, met with Mr. Gimbrone shortly after receiving the records, and confirmed that Mr. Gimbrone did not meet the institution's criteria for being prescribed a cane.  (Doc. 20, Higginbotham Aff. ¶12).  Mr. Gimbrone did not ask for any treatment for any foot-related problems after that date, although he did purchase

four bottles of aspirin.  (Doc. 20, Higginbotham Aff. ¶15, Ex.G).

Mr. Gimbrone's amended complaint sets forth a claim under 42 U.S.C. §1983, stating that defendants violated the constitutional prohibition against cruel and unusual punishment by refusing to provide adequate medical care.  The amended complaint also alleges that defendants violated 42 U.S.C. §12132, a provision of the Americans with Disabilities Act, but Mr. Gimbrone's motion for preliminary injunction mentions only his constitutional claims.

III.

In considering whether preliminary injunctive relief is warranted, this Court must consider (1) whether Plaintiff has demonstrated a strong likelihood of success on the merits; (2) whether Plaintiff will suffer irreparable injury in the absence of equitable relief; (3) whether a stay would cause substantial harm to others; and (4) whether the public interest is best served by issuing an injunction.  Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati, 363 F.3d 427, 432 (6th Cir. 2004). As the Sixth Circuit has explained, "[t]hese factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog, 945 F.2d 150, 153 (6th Cir. 1991).  The Magistrate Judge's Report and Recommendation determined both that Mr. Gimbrone did not have a strong likelihood of success on the merits and also that he did not show he would suffer irreparable injury in the absence of equitable relief.

In order to determine whether Mr. Gimbrone has a strong likelihood of success on the merits, this Court must determine whether he is likely to prevail on his claim under the Eighth Amendment.  To establish an Eighth Amendment violation, a prisoner must show that defendants displayed deliberate

4

indifference to the prisoner's serious medical condition. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Wilson v. Seiter, 501 U.S. 294, 297 (1991). This formulation has both a subjective and an objective component. Dominquez v. Corr. Med. Servs., 555 F.3d 543, 550 (6th Cir. 2009). Objectively, the medical condition must be substantially serious. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Subjectively, the defendants accused of violating the Eighth Amendment must have acted with a state of mind that can accurately be described as "deliberate indifference." Id. Each of these components requires some elaboration.

As to the subjective component, in Farmer, 511 U.S. at 839, the Court adopted "subjective recklessness as used in the criminal law" as the appropriate definition for deliberate indifference. It held that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety . . ." Id. at 837. Officials must be aware of facts from which they could conclude that a substantial risk exists and must actually draw that conclusion. Id. Prison officials who know of a substantial risk to the health or safety of an inmate are free from liability if "they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.

An Eighth Amendment medical claim must be premised on deliberate indifference. Mere negligence by a prison doctor or prison official with respect to medical diagnosis or treatment is not actionable under 42 U.S.C. §1983. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a

prisoner." <u>Estelle</u>, 429 U.S. at 106; <u>see Brooks v. Celeste</u>, 39
F.3d 125 (6th Cir. 1994).

The Magistrate Judge found that Mr. Gimbrone did not show he
was likely to succeed on the merits because although there was
some dispute as to whether Mr. Gimbrone's disability qualified as
a serious health condition and whether defendants demonstrated
indifference to his condition, Mr. Gimbrone's unsupported
allegations concerning these matters were inherently incredible
given the facts of the case and the documentary evidence provided
by defendants. The Magistrate Judge also found that there was
little if any medical evidence supporting a claim of irreparable
injury if a cane was not immediately prescribed.

IV.

Mr. Gimbrone has made numerous objections to the Magistrate
Judge's Report and Recommendation. This Court will consider each
in turn.

A.

First, Mr. Gimbrone objects to the Magistrate Judge's
statement that Mr. Gimbrone was examined by Dr. Williams on April
20, 2010 and that his cane was taken as a result of that
examination. He cites to defendants' Exhibit A, a copy of Mr.
Gimbrone's medical record, and points out that it has no entry
for April 20, 2010. Mr. Gimbrone argues that no examination took
place prior to his cane being taken away in 2010.

It appears that the Magistrate Judge's mention of the April
20, 2010 date came from Mr. Gimbrone's amended complaint, where
he states "[o]n April 20, 2010 Dr. Williams stripped the
Plaintiff of his cane." (Doc. 19, p. 4). Although the amended
complaint makes no mention of an examination accompanying this
action, the affidavit of Ms. Higginbotham refers to an
appointment Mr. Gimbrone had with Dr. Williams on April 5, 2010
and that Dr. Williams found Mr. Gimbrone no longer required use

6

of a cane and chose not to renew the order at that time.  (Doc.
20, Higginbotham Aff. ¶6).  Mr. Gimbrone did not dispute this
evidence before the Magistrate Judge.  Thus, although there is no
evidence Mr. Gimbrone was *examined* by Dr. Williams, there is
support in the record that Mr. Gimbrone's had an *appointment*
with Dr. Williams and the cane was revoked after that
appointment.

Regardless, Dr. Williams is not a defendant in this action
so whether or not he examined Mr. Gimbrone before taking his cane
is not relevant to this litigation.  Mr. Gimbrone's complaints
instead center around Dr. Krisher's refusal to reissue the cane.
The Magistrate Judge's mention of an April 20, 2010 examination
by Dr. Williams was by way of background and was not central to
the Magistrate Judge's reasoning or analysis.  The dispute over
this issue provides no basis for this Court to reject the
Magistrate Judge's Report and Recommendation.

B.

Mr. Gimbrone's second objection is that the medical records
submitted by defendants are contradicted by the rest of the
medical evidence.  Specifically, he argues the notation that Mr.
Gimbrone's walk is "strong and steady" (Doc. 20, Ex.A, p.1) is
contradicted by other medical evidence stating he can only walk
short distances without a cane.  Mr. Gimbrone, however, has not
pointed this Court to any specific document that contradicts this
finding or indicates that Mr. Gimbrone needed a cane.  Mr.
Gimbrone simply appears to disagree with Dr. Krisher's treatment
of his foot, but this difference of opinion regarding appropriate
treatment does not state a constitutional claim.  See e.g. Kimsey
v. Seiter, 785 F.2d 309 (6th Cir. 1986)(unpublished);  Westlake
v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976)(noting that
"[w]here a prisoner has received some medical attention and the
dispute is over the adequacy of the treatment, federal courts are

generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law").

### C.

In his third objection, Mr. Gimbrone continues to dispute that Dr. Krisher examined him at all, which Mr. Gimbrone argues demonstrates Dr. Krisher's deliberate indifference. Mr. Gimbrone argues he is entitled to an evidentiary hearing to determine his credibility on this issue.

The Magistrate Judge recognized that there were factual disputes regarding whether or not Dr. Krisher examined Mr. Gimbrone and refused to treat Mr. Gimbrone. Both of these disputes are relevant to whether or not Dr. Krisher acted with deliberate indifference. However, the Magistrate Judge did not order an evidentiary hearing. In the Sixth Circuit, "[w]here facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue, an evidentiary hearing must be held. [However,] where material facts are not in dispute, or where facts in dispute are not material to the preliminary injunction sought, district courts generally need not hold an evidentiary hearing." Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 553 (6th Cir. 2007)(quoting McDonald's Corp. v. Robertson, 147 F.3d 1301, 1311-1312 (11th Cir. 1998)). Where the dispute is created by a prisoner's statements that are themselves inherently incredible, however, an evidentiary hearing may not always be necessary. See Valentine v. United States, 488 F.3d 325, 333 (6th Cir. 2007)(in the habeas context, no evidentiary hearing is required where petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact); Gladney v. Pendleton Corr. Facility, 302 F.3d 773, 774 (7th Cir.

2002)(holding in the context of a §1915A dismissal, "no
evidentiary hearing is required in a prisoner's case . . . when
the factual allegations are incredible"); Respect Inc. v.
Committee on the Status of Women, 781 F.Supp. 1358, 1367
(N.D.Ill. 1992)(holding that even on summary judgment a district
court should not credit testimony that is inherently incredible;
namely, testimony that is irrefutably contradicted by documentary
evidence); Adderly v. Ferrier, No. 07-507, 2010 WL 2636109, at
*4 (W.D.Pa. 2010)(holding that plaintiff's objections were
inherently incredible such that no reasonable juror could believe
them in light of the whole record and upholding the magistrate
judge's granting of summary judgment).

This Court agrees with the Magistrate Judge's determination
that Mr. Gimbrone's statements that Dr. Krisher refused to
examine him or provide him with any further treatment for his
foot are inherently incredible and contradicted by the record
evidence, and therefore no evidentiary hearing is necessary.  The
medical records show that when Mr. Gimbrone asked for treatment
for psoriasis on his foot and to have a cane issued, he received
a medical appointment in less than two weeks.  Mr. Gimbrone's
claim that Dr. Krisher stated he would not treat Mr. Gimbrone's
foot in any way is simply not believable in light of the
documentary evidence that demonstrates an exam was conducted by
Dr. Krisher, Dr. Krisher made specific notations concerning the
appearance of Mr. Gimbrone's foot, and Dr. Krisher requested and
intended to review additional medical records to determine Mr.
Gimbrone's need for a cane.  (Doc. 20, Ex. A, p. 4).  Grievance
records Mr. Gimbrone himself attached to his original complaint
similarly reflect that Dr. Krisher examined Mr. Gimbrone,
reviewed his records, and made a medical judgment that a cane was
unnecessary.  (Doc. 2, ECF pp.7, 10, 12, 15).

To bolster his credibility that Dr. Krisher did not examine

him, Mr. Gimbrone points out that the nurse's findings recorded on his nursing assessment on September 13 were not reflected in Dr. Krisher's notes and that Dr. Krisher prescribed no treatment for him. Neither of these arguments bolsters Mr. Gimbrone's credibility. Mr. Gimbrone argues that Dr. Krisher's findings that he did not "observe lesions, tenderness, edema, or warmth" are contrary to the findings on the nursing assessment from September 13 (Doc. 20, Ex. B) and therefore demonstrate that Dr. Krisher did not examine Mr. Gimbrone. The nursing assessment simply states that Mr. Gimbrone has "multiple areas of psoriasis" and specifically indicates his left elbow, right elbow, and legs have psoriasis flare up. The nurse does not mention psoriasis on the right foot. Rather, she says the right foot has "old injury scars" and "redness along the scar line." These statements do not contradict Dr. Krisher's notes because Dr. Krisher's examination appears to have been limited to Mr. Gimbrone's right foot and Dr. Krisher's notes indicate Mr. Gimbrone has a scar on that foot. (Doc. 20, Ex. B, p. 4). Similarly, the fact that Mr. Gimbrone received no further treatment does not support a finding that Dr. Krisher refused to examine Mr. Gimbrone. The records indicate Mr. Gimbrone needed no further treatment, so one would not expect Dr. Krisher to prescribe any.

Mr. Gimbrone has had ample opportunity to submit evidence beyond his unsupported allegations regarding the deliberate indifference of defendants. The Magistrate Judge allowed both parties to file supplemental briefings on the preliminary injunction, yet Mr. Gimbrone continued to rely only on his own unsupported statement. An evidentiary hearing would not likely result in a finding that Mr. Gimbrone was so credible as to outweigh the other evidence in this case.

Importantly, an evidentiary hearing at this stage of the litigation would simply lead to preliminary findings. "The web

of conclusions upon which a preliminary injunction rests are 'statements as to probable outcomes,' nothing more." <u>Campbell Soup Co. v. Giles</u>, 47 F.3d 467, 472 (1st Cir. 1995)(quoting <u>Aoude v. Mobil Oil Corp.</u>, 862 F.2d 890, 894 (1st Cir. 1988)). At this point, the written record was sufficient for the Magistrate Judge to make an informed and preliminary conclusion that success on the merits is not likely and injunctive relief is not warranted, and this Court makes the same finding.

D.

In his fourth objection, Mr. Gimbrone argues that the records from Kettering Medical Center submitted by defendants do not constitute the entire medical file that is well over 300 pages. Had the entire record been submitted, he states, it would have demonstrated that the reconstruction surgery on his foot was intended to provide him limited mobility in concert with use of a cane. Mr. Gimbrone, however, has not attached any additional medical documents to either his motion for preliminary injunction or to his objections indicating that he is in need of a cane at this time. Therefore, there is no evidence in the record that Dr. Krisher failed to adequately review certain records.

Moreover, the issue here is not whether this Court believes Mr. Gimbrone is entitled to use a cane, but whether Mr. Gimbrone is likely to show that he has a "serious" medical need to which defendants were "deliberately indifferent." Defendants were not required to submit the entire medical record in order to respond to Mr. Gimbrone's motion for preliminary injunction on these issues. Rather, defendants submitted the medical documentation considered or available for consideration by Dr. Krisher when he decided not to prescribe a cane, including both Mr. Gimbrone's prison medical records and limited medical records from the Kettering Medical Center. Here, the evidence submitted demonstrates that Mr. Gimbrone was examined and at least some of

his medical records reviewed. This evidence supports the Magistrate Judge's finding that defendants were not deliberately indifferent to Mr. Gimbrone's condition.

E.

Mr. Gimbrone's fifth objection is not clear, but this Court construes it as an objection to the Magistrate Judge's statement that Mr. Gimbrone did not seek treatment for his pain for almost a year. (Doc. 24, p. 7). Mr. Gimbrone states that he sought treatment by both requesting a cane, which was denied, and by purchasing aspirin, which was ineffective in relieving his pain.

The Magistrate Judge's reference to Mr. Gimbrone's failure to seek treatment is relevant to Mr. Gimbrone's credibility regarding the seriousness of his condition. According to Mr. Gimbrone, he was not taking any medications (aspirin included) that were effective in relieving his pain. (Doc. 22, Ex. M, p.2). Thus, the Magistrate Judge found it incredible that Mr. Gimbrone would continue to suffer great pain, yet fail to ask for any additional treatment. The record reflects that "Inmate Gimbrone has not submitted any Health Services Request forms since November 2011." (Doc. 20, Aff. Beth Higginbotham, ¶15). Mr. Gimbrone's request for a cane was in September of 2011. The Magistrate Judge's statement that Mr. Gimbrone did not request any additional treatment refers to the period after his request for a cane was denied. This Court agrees with the Magistrate Judge that Mr. Gimbrone's failure to request any additional treatments after November 2011 demonstrates that Mr. Gimbrone's condition was likely not as serious as he claims it to be

F.

In Mr. Gimbrone's sixth objection he argues that the Magistrate Judge failed to address his claims under 42 U.S.C. §12132 of the Americans with Disabilities Act. Although this section was raised in his complaint, Mr. Gimbrone did not argue

anything related to 42 U.S.C. §12132 in support of his motion for a preliminary injunction. This Court will not consider it here, because the Magistrate Judge did not have the opportunity to address it. <u>Guethlein v. Potter</u>, No. 1:09-cv-451-HJW, 2011 WL 672046, *8 (S.D. Ohio February 17, 2011)("'[A]bsent compelling reasons, [the Federal Magistrate Judges Act] does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate,'" quoting <u>Murr v. United States</u>, 200 F.3d 895, 902 n.1 (6th Cir. 2000)).

V.

Defendants seek, pursuant to Fed. R. Civ. P. 72, an order from the Court striking Mr. Gimbrone's reply (Doc. 29) to defendants' opposition to Mr. Gimbrone's objections to the Report and Recommendation of the Magistrate Judge. (Doc. 30). Fed. R. Civ. P. 72(b) states in part

> Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy. . .

Thus, while the rule permits the filing of objections and a response, it does not contemplate a reply memorandum by the objecting party. Accordingly, a reply memorandum is not an appropriate filing (<u>See</u> <u>Easley v. Comm'r of Soc. Sec.</u>, No. 1:11-CV-00064, 2012 WL 910015, at *1 (S.D. Ohio Mar. 16, 2012); <u>Credit Gen. Ins. Co. v. Ins. Servs. Group, Inc.</u>, No. 2:05-CV-148, 2006 U.S. Dist. LEXIS 40459, at *5-7 (S.D. Ohio June 19, 2006)) and the Court therefore **GRANTS** the defendants' motion to strike.

VI.

Based on the foregoing reasons, the Court, after conducting a de novo review, overrules Mr. Gimbrone's objections and **ADOPTS**

13

the Report and Recommendation (Doc. 24) in its entirety. Accordingly, Mr. Gimbrone's motion for preliminary injunction (Doc.3) is **DENIED**. The Court **GRANTS** defendants' motion to strike (Doc.30) and Mr. Gimbrone's Reply (Doc.29) is ordered stricken from the record in this case.

     IT IS SO ORDERED.

                          <u>   /S/ Gregory L. Frost</u>
                          Gregory L. Frost, Judge
                          United States District Court